**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 1:20-CV-21808-RNS

TODD BENJAMIN INTERNATIONAL, LTD. *et al.*,

       Plaintiffs,

v.

GRANT THORNTON CAYMAN ISLANDS *et al.*,

       Defendants.

_____/

**<u>PLAINTIFFS' MOTION FOR FINAL APPROVAL OF</u>**
**<u>PROPOSED CLASS ACTION SETTLEMENT</u>**
**<u>AND FOR ATTORNEYS' FEES AND COSTS</u>**

## Table of Contents

Introduction ................................................................................................................ 1

Background and Procedural History ........................................................................ 2

    I.    Factual Background ......................................................................................... 2

    II.   Procedural History .......................................................................................... 3

        A.   Litigation ................................................................................................. 4

        B.   Settlement Efforts ................................................................................... 6

Overview of the Settlement ....................................................................................... 7

    I.    The proposed settlement class ........................................................................ 7

    II.   The settlement payments. ............................................................................... 8

    III.  Notice and administration of settlement payments to the class. .................... 8

    IV.  Scope of releases. .......................................................................................... 8

    V.   Conditions precedent. .................................................................................... 8

Argument and Citation to Authority ........................................................................ 9

    I.    The Court should grant final approval of the settlement. ............................... 9

        A.   Rule 23(e)(2)(A): Plaintiffs and their counsel adequately represented the class ... 10

        B.   Rule 23(e)(2)(B) and *Bennett* Factor #6: The settlement was negotiated at arm's length. ...11

        C.   Rule 23(e)(2)(C) and *Bennett* factors #1-4: The quality of relief to the class weighs in favor of approval ........................................................................ 12

            1.   The settlement provides strong relief for the class. ............................ 12

            2.   Continued litigation would entail substantial cost, risk, and delay. ... 14

            3.   The settlement provides for an effective distribution of proceeds to the class. . 14

            4.   The terms of the proposed attorneys' fees support final approval. ...... 15

            5.   Other agreements pertaining to the settlement. .................................. 15

        D.   Rule 23(e)(2)(D): The settlement treats settlement class members equitably ........ 15

        E.   *Bennett* factor #5: The class's reaction supports final approval. ............. 16

    II.   The Court should certify the settlement class. ............................................. 16

        A.   The settlement class has standing and is ascertainable. ......................... 16

        B.   The settlement class satisfies the requirements of Rule 23(a). ............... 17

            1.   The settlement class is sufficiently numerous. ................................... 17

            2.   There are questions of fact and law common to the class. ................... 17

            3.   The class representatives' claims are typical of the settlement class. ... 18

4.   The class representatives and class counsel are adequate to protect the interest of the settlement class. ............................................................................ 18

C.   The settlement class meets the requirements of Rule 23(b). ................................. 18

1.   The settlement class satisfies Rule 23(b)(3) because common issues of law and fact predominate. ................................................................................................ 19

2.   Class-wide settlement is the superior method for resolving the claims at issue in this case. ................................................................................................................ 19

III.   The Court should approve the requested attorneys' fees and litigation-cost reimbursements. ......................................................................................................... 20

A.   The requested fee award is in line with the Eleventh Circuit's common fund fee awards. ....................................................................................................................... 21

B.   The requested fee award is also reasonable under the Camden factors. ............... 21

1.   The time and labor required. ....................................................................... 22

2.   The novelty and difficulty of the relevant questions. .............................. 23

3.   The skill required to perform the services and the experience, reputation, and ability of Plaintiffs' counsel. ........................................................................... 24

4.   The risks posed to Plaintiffs' counsel. ....................................................... 24

5.   The amount involved and the results obtained. ........................................ 25

6.   The customary fee and awards in similar cases. ....................................... 25

C.   The requested fee is also reasonable under a lodestar cross-check. ...................... 26

D.   The Court should approve Class Counsel's request for reimbursement of their reasonable costs. ....................................................................................................... 27

Conclusion ............................................................................................................................. 27

**Table of Authorities**

## Cases

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................. 19

*Arkin v. Pressman, Inc.*, 38 F.4th 1001 (11th Cir. 2022) ............................................... 21

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988) ............................. 12

*Belin v. Health Ins. Innovations, Inc.*, 2022 WL 1126006 (S.D. Fla. Mar. 10, 2022) ............ 24, 25

*Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984) ...................................... 9, 10, 12, 14, 16

*Bruhl v. Price Waterhousecoopers Int'l*, 257 F.R.D. 684 (S.D. Fla. 2008) ............................ 18, 19

*Burrow v. Forjas Taurus S.A.*, 2019 WL 13034869 (S.D. Fla. Mar. 15, 2019) ............................ 19

*Cabot E. Broward 2 LLC v. Cabot*, 2018 WL 2006762 (S.D. Fla. Mar. 21, 2018) ................ 19, 25

*Camden I Condo. Ass'n, Inc. v Dunkle*, 946 F.2d 768 (11th Cir. 1991) ......................... 20, 21, 25

*Cherry v. Dometic Corp.*, 986 F.3d 1296 (11th Cir. 2021) ............................................ 16

*Connor v. Permanent Gen. Assurance Corp.*, 2022 WL 1642866 (S.D. Fla. Apr. 11, 2022) ....... 17

*Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir. 1986) ...................................... 17

*Diakos v. HSS Sys., LLC*, 2016 WL 3702698 (S.D. Fla. Feb. 5, 2016) ........................... 21, 25, 26

*Dickenson v. NPAS Sols., LLC*, 2024 WL 4142934 (11th Cir. Sept. 11, 2024) ........................... 26

*Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023) ..................................................... 16, 17

*Ferron v. Kraft Heinz Foods Co.*, 2021 WL 2940240 (S.D. Fla. July 13, 2021) .................... 11, 12

*Flagstar Bank, FSB v. Keiter, Stephens, Hurst, Gary & Shreaves*, 2022 WL 135396 (E.D. Va. Jan. 13, 2022) ........................................................................... 13

*Gevaerts v. TD Bank*, 2015 WL 6751061 (S.D. Fla. Nov. 5, 2012) .................................... 24

*Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023) ................................. 19

*Hanley v. Tampa Bay Sports & Ent. LLC*, 2020 WL 2517766 (M.D. Fla. Apr. 23, 2020) ............ 27

*In re Check Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330 (S. D. Fla. 2011) ...................... 14, 24, 25

*In re Checking Acct. Overdraft Litig.*, 2015 WL 12641970 (S.D. Fla. May 22, 2015) ................ 27

*In re Checking Acct. Overdraft Litig.*, 2020 WL 4586398 (S.D. Fla. Aug. 10, 2020) ................ 21

*In re Checking Acct. Overdraft Litig.*, 286 F.R.D. 645 (S.D. Fla. 2012) ............................. 18

*In re Clarus Corp. Sec. Litig.*, 2005 WL 8172269 (N.D. Ga. Jan. 6, 2005) ........................... 26

*In re Health Ins. Innovations Sec. Litig.*, 2020 WL 10486665 (M.D. Fla. Oct. 21, 2020) .......... 14

*In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881 (M.D. Fla. Mar. 23, 2021) ............ 26

iii

*In re Home Depot Inc.*, 931 F.3d 1065 (11th Cir. 2019) ............................................................. 26

*In re Kingate Mgmt. Ltd. Litig.*, 2016 WL 5339538 (S.D.N.Y. Sept. 21, 2016) .......................... 13

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 2024 WL 1554329 (S.D. Fla. Apr. 10, 2024) ................................................................................................................9, 10, 11, 14, 18

*In re NetBank, Inc. Sec. Litig.*, 2011 WL 13353222 (N.D. Ga. Nov. 9, 2011) ............................ 26

*In re Profit Recovery Grp. Int'l, Inc. Sec. Litig.*, 2005 WL 8172262 (N.D. Ga. May 26, 2005) .. 26

*In re Rayonier Inc. Sec. Litig.*, 2017 WL 4542852 (M.D. Fla. Oct. 5, 2017) ............................... 14

*In re Takata Airbag Prod. Liab. Litig.*, 2023 WL 6274837 (S.D. Fla. Aug. 24, 2023) ................ 20

*In re Takata Airbag Prod. Liab. Litig.*, 677 F. Supp. 3d 1311 (S.D. Fla. 2023) ............... 17, 18, 19

*In re Woodbridge Invests. Litig.*, 2021 WL 6618678 (C.D. Cal. Sept. 3, 2021) .......................... 15

*Iowa Pub. Emps.' Ret. Sys. v. Deloitte & Touche LLP*, 558 F. App'x 138 (2nd Circ. 2014) ........ 13

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) .................................. 21

*Kilgo v. Bowman Trans.*, 789 F.2d 859 (11th Cir. 1986) ............................................................. 17

*Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298 (S.D. Fla. 2005) ...........................................11

*Millstein v. Holtz*, 2022 WL 18024840 (S.D. Fla. Dec. 30, 2022) ......................................... 16, 25

*Perlman v. Grant Thornton Cayman Islands*, No. 1:24-cv-20188-KMM (S.D. Fla.) ................... 3

*Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334 (S.D. Fla. 2007) ........................ 20, 26

*Ponzio v. Pinon*, 87 F.4th 487 (11th Cir. 2023) ........................................................................... 9

*Pritchard v. Apyx Med. Corp.*, 2020 WL 6937821 (M.D. Fla. Nov. 18, 2020) ........................... 26

*Sesto v. Prospect CharterCARE, LLC*, 2019 WL 2394251 (D.R.I. June 6, 2019) ....................... 15

*Taylor v. Rothstein Kass & Co., PLLC*, 2020 WL 554583 (N.D. Tex. Feb. 4, 2020) .................. 13

*Taylor v. Serv. Corp. Int'l*, 2023 WL 2346295 (S.D. Fla. Mar. 3, 2023) ..............11, 12, 14, 23, 24

*Tershakovec v. Ford Motor Co., Inc.*, 79 F.4th 1299 (11th Cir. 2023) .......................................... 19

*Torres-Vallejo v. Creativexteriors, Inc.*, 220 F. Supp. 3d 1074 (D. Colo. 2016) .......................... 20

*TransUnion LLC v. Ramirez*, 594 U.S. 413  (2021) ..................................................................... 16

*Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350 (11th Cir. 2009) ............................................... 17

*Wolff v. Cash 4 Titles*, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) .................................... 21, 26

**Statutes and Rules**

Fed. R. Civ. P. 23 .............................................................9, 11, 12, 14, 15, 17, 18, 19

**Introduction**

This proposed class action arises from the collapse of investment funds managed by TCA Fund Management Group Corp. ("TCA"). The funds collapsed when TCA announced, in January 2020, that it was no longer able to pay redemptions.

The funds' collapse precipitated a series of lawsuits: (1) this proposed class action, (2) litigation brought by the SEC in this District (in which the SEC obtained the appointment of a Receiver), (3) an action in the Cayman Islands in which the court appointed Joint Official Liquidators ("JOLs") for one of the TCA feeder funds, and finally (4) separate adversarial suits brought by the Receiver. Both this action and one of the Receiver's actions assert claims against the auditor of the TCA funds, Grant Thornton. In addition, both the Plaintiffs and the Receiver demanded relief from TCA's former officers and directors.

Litigation ensued. The parties in this case briefed a series of motions (including disputes over jurisdiction). They then engaged in formal discovery and expert-related efforts. Finally, in 2024, the parties held several mediations with the Honorable Michael A. Hanzman (Ret.), which included several months of post-mediation negotiations spearheaded by Judge Hanzman, at the conclusion of which the parties reached a global settlement. The multi-faceted settlement proposes to resolve multiple claims involving the various parties in multiple jurisdictions. The settlement resolves claims of the proposed class, the Receiver, the JOLs, TCA's former officers and directors, and both Grant Thornton entities (Grant Thornton Cayman Islands and Grant Thornton Ireland). The settlement will deliver $26,499,125 in recoveries.

Plaintiffs presented this proposed class action settlement to the Court for preliminary approval in December 2024. At that time, they asked the Court to find that, pursuant to Rule 23(e)(1), it would likely approve the settlement and certify the settlement class. The Court agreed, made those findings, and directed the Receiver to disseminate notice of the settlement.

Pursuant to the Court's order, notice went out to the settlement class. The reaction from the class to date has been positive: as of April 2, 2025, no class members have objected to the settlement and no class members have opted out. For that reason, and those that follow, Plaintiffs respectfully request that the Court grant final approval of the settlement and enter an order, under Rule 23(e)(1), approving the settlement and certifying the class for settlement purposes.

Additionally, with this litigation coming to an end, Plaintiffs' counsel request to be compensated for their effort in achieving this strong result for the class and for resolving the

various multi-jurisdictional claims. Whereas counsel have been working on this matter since 2020 and have advanced substantial litigation costs during that time on behalf of the class, they have yet to be compensated for their efforts. And as discussed below, to deliver this proposed settlement, Plaintiffs' counsel agreed to reduce their fee to help achieve the overall result. So, through this motion, counsel now requests reimbursement of their litigation costs as well as an award of $6,220,500 in attorneys' fees—which will compensate not only Class Counsel, but also counsel for the Receiver. This combined fee, which amounts to less than 24% of the total settlement value, is appropriate under Eleventh Circuit precedent. Given the work undertaken, the inherent risk in prosecuting the case involving foreign entities, and the strong result delivered for the class, Plaintiffs' counsel believe their request appropriately compensates them for their efforts and should therefore be approved.

### Background and Procedural History

### I.      Factual Background

Before the funds collapsed, TCA managed three pooled investment vehicles: (i) TCA Global Credit Fund, LP; (ii) TCA Global Credit Fund, Ltd.; and (iii) TCA Global Credit Master Fund, LP (collectively "the Funds"). [ECF 105, ¶ 20]. The first two funds, *i.e.*, the "Feeder Funds," funneled investments into the third fund (the "Master Fund"), which was used for short-term direct lending under the control of TCA. [*Id.* ¶¶ 21, 26].

TCA reported that the Master Fund's loans yielded positive results, telling investors in December 2019 that the Master Fund had 35 consecutive months of profit, over $500 million in assets under management, and a 7.07% year-to-date return. [*Id.* ¶ 27]. In reality, Plaintiffs alleged that TCA artificially inflated the fund assets to manipulate the Funds' net asset value. [*Id.* ¶ 86]. When the Funds collapsed in 2020, the Master Funds' investments were allegedly worth hundreds of millions of dollars less than what TCA had told investors. [*Id.* ¶¶ 45-47, 78-85].

The Funds were established in 2010, and the SEC alleged that TCA fraudulently inflated the Funds' revenue and net asset value since the Funds were established. *SEC v. TCA Fund Mgmt. Grp.*, No. 1:20-cv-21964-CMA (S.D. Fla.) (the "SEC Action"), ECF 1, ¶¶ 3, 12-14. The Funds' financials were audited throughout the years, and the Funds' past auditor allegedly became aware of the inconsistencies in the Funds' financials. *Id.* ¶¶ 32-33, 38. That auditor left in 2017. [ECF 69-2].

Defendants Grant Thornton Cayman Islands and Grant Thornton Ireland (together, "Grant Thornton") took over as the Funds' independent auditor closer to the Funds' collapse, auditing only the final two years' financial statements (2017 and 2018). [ECF 105, ¶ 48]. Plaintiffs alleged that, as part of the audit process, Grant Thornton became aware that TCA was artificially inflating the Funds' assets and that TCA had significant control failures. [*Id.* ¶¶ 56-57, 65-66]. Grant Thornton issued audit reports for 2017 and 2018 which Plaintiffs alleged downplayed the Funds' significant financial and control issues. [*Id.* ¶¶ 59-61, 67-73]. For its part, Grant Thornton strenuously defended itself, consistently asserting that it did nothing wrong. It noted, among other things, that it issued audit reports containing qualified opinions, which identified many of the deficiencies that allegedly led to the Funds' collapse.

Plaintiffs Todd Benjamin International, Ltd., Todd Benjamin, Zbynek Dvorak, and Fawzi Bawab were among the investors in the Funds who suffered losses. [*Id.* ¶¶ 29-44].

## II. Procedural History

This settlement resolves claims pertaining to four separate court proceedings:

1. This action, which Plaintiffs refer to as the "Class Action."

2. The SEC Action, in which the SEC brought an action against TCA, resulting in the appointment of the Receiver.[1] *SEC v. TCA Fund Mgmt. Grp.*, No. 1:20-cv-21964-CMA (S.D. Fla.).

3. The action pending in the Financial Services Division of the Grand Court of the Cayman Islands, in which Eleanor Fisher and Tammy Fu[2] were appointed to wind up TCA Global Credit Fund, Ltd. (the "Cayman Action"). FSD Cause No.: 51 of 2020 (RMJ).

4. The Receiver's separate suit against Grant Thornton (the "Receiver Action"). *Perlman v. Grant Thornton Cayman Islands*, No. 1:24-cv-20188-KMM (S.D. Fla.).

---

[1] Jonathan Perlman was appointed as Receiver for TCA, TCA Global Credit Fund, LP, TCA Global Credit Fund, Ltd., TCA Global Credit Master Fund, LP, and TCA Global Lending Corp. SEC Action, ECF 5. Subsequently, Eleanor Fisher and Tammy Fu were appointed as the joint official liquidators of TCA Global Credit Fund, Ltd. by the Grand Court of the Cayman Islands. SEC Action, ECF 154.

[2] Ms. Fu has since been replaced by Joel Edwards.

### A.  Litigation

Beginning with the first-filed of the actions, this Class Action, Plaintiffs initiated suit in April 2020. They named as defendants TCA and the Former Officers and Directors based on the defendants' inflation of the Funds' net asset value and other misrepresentations. [ECF 1].

On May 11, 2020, the SEC initiated suit against TCA. SEC Action, ECF 1. In that action, Judge Altonaga appointed Jonathan Perlman as Receiver. *Id.*, ECF 5. Plaintiffs in the Class Action and the Receiver then agreed to stay the Class Action in light of the litigation injunction in the SEC Action's receivership order. [ECF 15-16]. In the meantime, Plaintiffs and the Receiver coordinated their efforts to pursue claims on behalf of the investors in the proposed class alongside any receivership claims. [*See* ECF 170-1, Joint Declaration of Plaintiffs' Counsel in Support of Unopposed Motions for Preliminary Approval of Settlement ("Prelim. Counsel Decl."), ¶ 8]. Ultimately, Plaintiffs and the Receiver entered into a court-approved Litigation Coordination Agreement. SEC Action, ECF 285. They shared information and documents, undertook a comprehensive review of receivership records, and coordinated legal strategy. Prelim. Counsel Decl. ¶¶ 9-11. Later, in August 2022, Plaintiffs moved to lift the stay to exclude the prior defendants and to name Grant Thornton entities as defendants. [ECF 19]. This Court granted that motion. [ECF 20].

Plaintiffs then filed an amended complaint. [ECF 21]. The amended complaint drew on Plaintiffs' review of TCA books and records and other Receivership records. Prelim. Counsel Decl. ¶¶ 9-11. Plaintiffs reviewed over 13,000 such documents to bolster their allegations and to establish jurisdiction over the international defendants. *Id.* The amended complaint brought three claims against Grant Thornton: (i) negligent misrepresentation, (ii) aiding and abetting breach of fiduciary duty, and (iii) aiding and abetting fraud. [ECF 21, ¶¶ 119-143].

Defendants moved to dismiss in March 2023, arguing lack of personal jurisdiction, improper venue, and failure to state a claim. [ECF 58]. Plaintiffs opposed the motion, citing many of the in-depth factual allegations and over 50 exhibits that supported jurisdictional allegations. [ECF 68]. In July 2023, the Court denied the motion as to Grant Thornton, citing the detailed facts alleged in the complaint and the many exhibits which showed that Grant Thornton had subjected itself to Florida's jurisdiction. The Court also cited the many specific allegations relating to Grant

Thornton's alleged misrepresentations and knowledge of TCA's wrongdoing.[3] [ECF 85 at 16-18, 20-23].

Following the Court's ruling, Plaintiffs filed a second amended complaint in October 2023, adding additional Plaintiffs (Zbynek Dvorak and Fawzi Bawab). [ECF 105].

Grant Thornton would later move for judgment on the pleadings as to Plaintiffs' aiding and abetting breach of fiduciary claim. [ECF 134, 142]. Plaintiffs filed an opposition brief, marshaling authority opposing Grant Thornton's motion. [ECF 143]. The motion remains pending due to the parties' settlement. [*See* ECF 159].

The parties engaged in a lengthy period of discovery. Although they worked cooperatively to resolve a series of issues, discovery was contested, and it repeatedly required the Court's intervention. Prelim. Counsel Decl. ¶ 13. In total, Plaintiffs brought eight discovery disputes to the Court for resolution in October 2023, succeeding in gaining additional discovery in six of those disputes. [ECF 101, 116]. And before reaching a settlement, Plaintiffs were preparing to seek further assistance on additional issues. [*See* ECF 156].

Grant Thornton, for its part, produced tens of thousands of documents, which Plaintiffs reviewed. Prelim. Counsel Decl. ¶ 13. Plaintiffs also retained an experienced and highly credentialed auditing expert to assist in discovery and the review of documents, as well as to prepare for class certification. *Id.* ¶ 14. Plaintiffs also engaged an accounting expert to assist with formulating their damages theory and estimating such amounts. *Id.*

Grant Thornton also served discovery, requiring still more meet-and-confer efforts. *Id.* ¶ 15. While counsel were able to negotiate the scope of production and responses, Grant Thornton brought disputes to the Court for resolution in January 2024, with the Court sustaining the majority of Plaintiffs' objections. [ECF 128, 129, 157]. Plaintiffs ultimately produced over two thousand documents and answered Defendants' interrogatories. Prelim. Counsel Decl. ¶ 15.

Throughout the case, Grant Thornton denied liability and vigorously defended itself. To this day, it maintains it did nothing unlawful in connection with auditing the Funds' financial statements.

---

[3] The Court dismissed Grant Thornton's international umbrella company, Grant Thornton International, Ltd., for lack of personal jurisdiction. [ECF 85]. The Court also dismissed the Bolder defendants based on a forum selection clause in the Subscription Agreement between Plaintiffs and the Funds, which applied to Bolder as the Funds' administrator. [*Id.*].

**B. Settlement Efforts**

As the Class Action progressed, the Receiver continued his efforts to collect assets for distribution to the Funds' investors. As part of those efforts, the Receiver negotiated a settlement agreement with the Former Officers and Directors in August 2023 for approximately $3.6 million—the approximate balance of the applicable D&O insurance policies. SEC Action, ECF 369-1. Grant Thornton objected, however, to the settlement's inclusion of a request for a bar order, and Judge Altonaga sustained the objections, so the settlement was not effectuated. *Id.*, ECF 374, 377, 420, 424.

As the parties prepared for international depositions in the Cayman Islands, Guernsey, Ireland, and Australia, Plaintiffs, the Receiver, and Grant Thornton agreed to mediate. Prelim. Counsel Decl. ¶ 20. On March 25, 2024, the parties mediated with the assistance of the Honorable Michael A. Hanzman (Ret.) of Bilzin Sumberg Baena Price & Axelrod LLP. *Id.* ¶ 21; [ECF 152].

Plaintiffs, the Receiver, and Grant Thornton Cayman Islands reached a settlement in principle at the mediation, contingent upon a settlement being reached with Grant Thornton Ireland. Prelim. Counsel Decl. ¶ 21. Grant Thornton Cayman Islands agreed to pay $3 million. *Id.*

On April 29, 2024, Plaintiffs, the Receiver, and Grant Thornton Ireland engaged in a second mediation session, again with the assistance of Mr. Hanzman, and succeeded in reaching a settlement in principle. *Id.* ¶ 22; [ECF 158]. Grant Thornton Ireland agreed to pay $19.25 million (as explained below, this number later increased). Prelim. Counsel Decl. ¶ 22.

Through these efforts, Grant Thornton also agreed to withdraw its previous objections to the settlement with the Former Officers and Directors, allowing for that settlement to be effectuated through the now-pending proposed settlement. *Id.* The Former Officers and Directors agreed to pay $3.44 million. *Id.* ¶ 28.

Following mediation, the JOLs asserted that they may have claims against Grant Thornton and reserved their rights to bring those claims. *Id.* ¶ 23. Because the instant settlement contemplated global peace for Grant Thornton, it became necessary for the parties to address the JOLs' purported rights. *Id.* ¶¶ 23-26. Plaintiffs, the Receiver, and Grant Thornton entered into months-long negotiations with the JOLs. *Id.*

After months of effort, the parties reached agreement regarding the JOLs' claims. *Id.* The JOLs will receive $2.4 million to reimburse expenses already approved in the Cayman Action. *Id.* ¶ 25. The payment to the JOLs is derived from three sources: (1) $800,000 from Grant Thornton

6

Ireland (making its total contribution $20.05 million); (2) $800,000 from the Receiver out of the overall recovery attained; and (3) $800,000 from Plaintiffs' counsel in the form of a reduction in attorney's fees sought, as discussed in more detail below. *Id.*

The parties then finalized their comprehensive settlement agreement memorializing the terms on which they have agreed to resolve the Class Action, the Receiver Action, the JOLs' claims, and the claims against the Former Officers and Directors. They also prepared the exhibits to the settlement agreement (including the class notices) as well as Plaintiffs' preliminary approval motion. *Id.* ¶ 26.

On December 20, 2024, Plaintiffs filed their motion for preliminary approval of the proposed settlement. [ECF 170]. The Court granted the motion, appointed Class Counsel, and directed the Receiver to give notice to the settlement class. [ECF 172, 176]. The details of the parties' proposed class settlement are reflected in the settlement agreement, attached as Exhibit 1 to ECF 171 (referred hereinafter as "Settlement").

Since then, notice has been distributed to the settlement class consistent with the Court's order granting preliminary approval. No members of the settlement class have opted out from or objected to the settlement. Judge Altonaga has preliminarily approved the settlement in the SEC Action and as of April 2, 2025, after holding the final approval hearing, has approved the settlement. And the JOLs obtained approval of the settlement in the Cayman Action. To the extent there are further developments in the SEC Action, the Cayman Action, or from the settlement class members, Plaintiffs will update the Court prior to the final approval hearing.

<u>**Overview of the Settlement**</u>

### I.     The proposed settlement class.

The parties' settlement agreement defines the settlement class as:

> [A]ll persons (excluding profiteers or investors who received back more than their principal investment and investors who opt out of the settlement) with a beneficial interest in or who invested in TCA Global Credit Master Fund L.P., including all investors in TCA Global Credit Fund, L.P. and TCA Global Credit Fund, Ltd.[4]

---

[4] Further excluded from the Settlement Class are Grant Thornton and its parents, affiliates, subsidiaries, legal representatives, predecessors, successors, assigns, and employees; the Former Officers and Directors; and any judge to whom this case is assigned, his or her spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons. Settlement § 2(v).

Settlement, § 2(v).

**II.      The settlement payments.**

The settlement will generate nearly $26.5 million in settlement payments from the two Grant Thornton entities and the Former Officers and Directors.

Grant Thornton, for its part, will pay a combined $23.05 million to resolve the Class Action, the Receiver Action, and the JOLs' claims. *Id.* § 4. The Former Officers and Directors, for their part, will pay a little over $3.4 million. *Id.* As set forth above, the JOLs will receive a payment of $2.4 million to reimburse their expenses already approved in the Cayman Action.

**III.     Notice and administration of settlement payments to the class.**

The notice and administration of the settlement has been streamlined, as the parties agreed that the Receiver would issue notice to the settlement class, and once the settlement is approved, will distribute the settlement funds in compliance with orders from the court in the SEC Action. *Id.* § 7(c). The Receiver previously made a showing in the SEC Action of his ability to communicate with the class and deliver payments to them, with the distribution plan having been approved by Judge Altonaga. *Id.* §§ 5, 7; *see also* SEC Action, ECF 284.

For disseminating notice to the class, the Receiver used the Funds' investor contact information, including email addresses and mailing addresses, that were in his possession. Declaration of Jonathan Perlman (the "Receiver Decl."), attached as **Exhibit 2**, ¶¶ 6, 8. The Receiver sent notice by email to all class members or their representatives for whom an email address is available, and otherwise by mail. *Id.* ¶ 8; *see also* Settlement, § 7. The Receiver has also posted a long-form notice with more detailed information for the class on the Receivership website. Receiver Decl. ¶ 9.

**IV.      Scope of releases.**

In exchange for the benefits provided under the settlement, class members will release their claims against Grant Thornton and the Former Officers and Directors relating to the Class Action. Settlement, § 8(h)(i). Plaintiffs also agreed to dismiss the Class Action with prejudice upon final approval of the settlement. *Id.* § 7(a)(3). The class is also receiving reciprocal releases from both Grant Thornton and the Former Officers and Directors.

**V.       Conditions precedent.**

As highlighted in Plaintiffs' motion for preliminary approval, the settlement requires multiple courts' review and approval given the various stakeholders and litigations implicated. The

settlement is undergoing the approval process contemplated by Rule 23 in this Court and has been submitted for approval in the SEC Action by the Receiver and in the Cayman Action by the JOLs consistent with the terms of the settlement. Settlement, §§ 5-6; Joint Declaration of Counsel ("Counsel Decl."), attached as **Exhibit 1**, ¶¶ 7, 8. Judge Altonaga granted preliminary settlement approval in the SEC Action and, on April 2, 2025, approved the settlement. SEC Action, ECF 486, 509. Likewise, the JOLs obtained approval of the settlement in the Cayman Action. Counsel Decl. ¶ 8. Obtaining approvals in the SEC Action and in the Cayman Action are conditions precedent for Plaintiffs to obtain final approval under Rule 23. Settlement, § 3. Plaintiffs will provide further information on the status of the conditions precedent in their reply brief before the final approval hearing.

<u>**Argument and Citation to Authority**</u>

**I.    The Court should grant final approval of the settlement.**

The claims brought on behalf of a class may only be settled with court approval. Fed. R. Civ. P. 23(e). Court approval entails both a substantive approval of the settlement as well as certification of a class for settlement purposes. Here, the Court has already found that it will likely be able to approve the proposed settlement as fair, reasonable, and adequate under Rule 23(e)(2) and that it will likely be able to certify the settlement class. [ECF 176, ¶¶ 6, 9].

On the first point, whether the settlement merits approval, courts are guided by the elements in Rule 23(e)(2). The Rule 23(e)(2) elements direct courts to consider: (1) the adequacy of representation; (2) whether the proposal was negotiated at arm's length; (3) the adequacy of the relief provided by the settlement; and (4) whether the agreement treats class members equitably. *See* Fed. R. Civ. P. 23(e)(2).

Supplementing those Rule 23(e) elements, are the six "*Bennett* factors." *See generally Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *see also In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 2024 WL 1554329, at *3 (S.D. Fla. Apr. 10, 2024)(applying both Rule 23 and *Bennett* factors); *Ponzio v. Pinon*, 87 F.4th 487, 494-95 (11th Cir. 2023)(same). In *Bennett*, the Eleventh Circuit articulated the following list of six additional factors for approving class settlements:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the

substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

737 F.2d at 986.

Below, Plaintiffs explain why the settlement merits final approval, under both the Rule 23(e)(2) elements and the six *Bennett* factors, before later explaining why the class satisfies the requirements for class certification. For the sake of efficiency, Plaintiffs proceed through each element of Rule 23(e)(2), below, while addressing the relevant *Bennett* factors as they overlap with those elements.

### A. Rule 23(e)(2)(A): Plaintiffs and their counsel adequately represented the class.

Class representatives will be deemed adequate by "(i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified [c]lass [c]ounsel; (iii) producing information and documents to [c]lass [c]ounsel to permit investigation and development of the complaints; (iv) being available as needed throughout the litigation . . . ; and (v) monitoring the [l]itigation." *In re Mednax Servs.*, 2024 WL 1554329, at *6. Here, the class representatives faithfully and ably performed these roles. They actively participated in the years-long litigation, produced discovery, provided information at counsel's request, and stayed abreast of litigation developments—all before reviewing and approving the settlement. Prelim. Counsel Decl. ¶ 37.

Meanwhile, class counsel demonstrates adequacy by "fully investigating the facts and legal claims," "fully briefing" any motions, and "conducting extensive discovery." *In re Mednax Servs.*, 2024 WL 1554329, at *6. Here, Class Counsel used their considerable experience litigating complex financial fraud class actions to prosecute this case and then deliver this settlement. Prelim. Counsel Decl. ¶ 38. They culled through millions of Receivership documents to plead a detailed amended complaint. *Id.* They opposed a motion to dismiss, establishing personal jurisdiction over two international defendants. *Id.* ¶ 12; [ECF 69-1]. They engaged in discovery, analyzing thousands of pages of documents, while also successfully litigating various discovery disputes. *Id.* ¶¶ 13-15; ECF 116. Class Counsel also retained a well-qualified audit expert and a forensic accounting expert. Prelim. Counsel Decl. ¶ 14. And finally, counsel spent months in protracted negotiations—first with Grant Thornton and then with the JOLs—to produce a settlement that provides substantial relief to the class. *Id.* ¶¶ 20-26. Given this "thorough investigation and

analysis of the [class members'] claims" and "contentious mediation[s]," this factor favors final approval. *Taylor v. Serv. Corp. Int'l*, 2023 WL 2346295, at *4 (S.D. Fla. Mar. 3, 2023).

### B. Rule 23(e)(2)(B) and *Bennett* Factor #6: The settlement was negotiated at arm's length.

The next element asks the Court to confirm that the settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). This element is a "procedural" concern, that "look[s] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A)-(B), Advisory Committee's Notes. Relatedly, the sixth *Bennett* factor evaluates the stage at which settlement was achieved. 737 F.2d at 986.

Here, the parties did not begin negotiating until March 2024, several years after the litigation began. Prelim. Counsel Decl. ¶ 21. By then, the parties had already engaged in motion practice, conducted investigations and discovery, and were preparing for expert disclosures and class certification. Rule 23(e)(2)(B) favors approval where the "nature and amount of discovery" provides "an adequate information base" upon which counsel can "negotiat[e] on behalf of the class." Fed. R. Civ. P. 23(e)(2)(A)-(B), Advisory Committee's Notes; *see also In re Mednax Servs.*, 2024 WL 1554329, at *6 (approving settlement in part because the parties settled after "significant meaningful discovery that lasted over a year"). This was true here when the parties mediated. The case was thus mature enough that "Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Taylor*, 2023 WL 2346295, at *4 (quoting *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005)).

The parties also reached their settlement with the assistance of Judge Hanzman, an experienced and well-respected litigator, jurist, and mediator, over the course of two mediation sessions and months of follow-up. Prelim. Counsel Decl. ¶¶ 20-26. Rule 23(e)(2)(B) weighs in favor of approval where the parties' negotiations involve "a neutral . . . mediator or facilitator" that suggests negotiations "were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e)(2)(A)-(B), Advisory Committee's Notes; *see also Ferron v. Kraft Heinz Foods Co.*, 2021 WL 2940240, at *8 (S.D. Fla. July 13, 2021) (approving settlement in part because it was overseen by "an experienced and well-respected mediator").

"Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Taylor*, 2023 WL 2346295, at *4 (quotation omitted). This Rule 23(e)(2) element and *Bennett* factor therefore support final settlement approval.

C. **Rule 23(e)(2)(C) and *Bennett* factors #1-4: The quality of relief to the class weighs in favor of approval.**

Next, the Court assesses the adequacy of the settlement's relief. Fed. R. Civ. P. 23(e)(2)(C). Under Rule 23(e)(2)(C), the Court considers (1) the costs, risks, and delay of trial and appeal; (2) the effectiveness of the proposed methods of distributing relief and processing claims; (3) the terms of any proposed attorneys' fees awards; and finally, (4) any agreements made in connection with the proposal. *See* Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv). Relatedly, the first four *Bennett* factors require consideration of (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; and (4) the complexity, expense and duration of litigation. *See* 737 F.2d at 986.

1. **The settlement provides strong relief for the class.**

The settlement here provides for a total fund of nearly $26.5 million. Grant Thornton will pay a combined $23.05 million, and the Former Officers and Directors will pay a little more than $3.4 million to resolve demands asserted by the Receiver and Plaintiffs. The global settlement thus delivers substantial monetary relief. And courts "regularly find settlements to be fair even where '[p]laintiffs have not received the optimal relief.'" *Ferron*, 2021 WL 2940240, at *10 (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988)).

The bulk of the recovery, to be paid by Grant Thornton, represents a substantial portion of what the class might have hoped to recover from Grant Thornton had it prevailed at trial. While the Funds as a whole lost much more than $23 million, the Funds existed for a decade, while Grant Thornton's involvement began only toward the end (in 2018 and 2019 only). Meanwhile, another auditor audited the Funds' financial statements during the earlier years. Because Grant Thornton only served as the Funds' auditor for the final two years, and because the evidence of wrongdoing, in Plaintiffs' estimation, was strongest for the final year's financial statements only, Plaintiffs forecasted that a win at trial against Grant Thornton might reasonably have been expected to generate approximately $45 million.[5] This means that the proposed settlement stands poised to

---

[5] While Plaintiffs believe substantive law could expand Grant Thornton's liability for overall investor damages, they acknowledge the risk in proceeding with that damages theory.

require payment from Grant Thornton of over 50% of what Plaintiffs might have obtained years from now, had they prevailed at trial.

While that alone suggests a strong result for the class, it's also worth recognizing that Grant Thornton asserted potentially strong defenses. Chief among those defenses, Grant Thornton issued *qualified* audit opinions—not "clean" audits. While Plaintiffs contend that these qualified opinions were inadequate, and that adverse opinions should have been issued, the fact is that Grant Thornton's audits did identify a number of weaknesses in the TCA funds. As a result, a jury may not have been convinced that Grant Thornton should be held accountable. Plaintiffs note that the vast majority of cases brought against auditors have involved *clean* audit opinions—not qualified opinions like the one issued here. *See, e.g.*, *Iowa Pub. Emps.' Ret. Sys. v. Deloitte & Touche LLP*, 558 F. App'x 138 (2nd Circ. 2014); *Flagstar Bank, FSB v. Keiter, Stephens, Hurst, Gary & Shreaves*, 2022 WL 135396 (E.D. Va. Jan. 13, 2022); *Taylor v. Rothstein Kass & Co., PLLC*, 2020 WL 554583 (N.D. Tex. Feb. 4, 2020); *In re Kingate Mgmt. Ltd. Litig.*, 2016 WL 5339538 (S.D.N.Y. Sept. 21, 2016). Although Plaintiffs believe they could overcome this defense, its existence highlights litigation risk and supports the reasonableness of the settlement.

Also worth noting, Grant Thornton's worldwide parent company is *not* a party to this litigation. Only two foreign subsidiaries remain as defendants. And those defendants had insurance policies that were unlikely to cover a full-scale adverse judgment, as they were quickly vanishing while funding the cost of Grant Thornton's defense. Had litigation continued, and even if Plaintiffs had prevailed at trial, the policies would have extinguished or greatly diminished.

The remaining payment—$3.44 million—will be contributed by the Former Officers and Directors. Previously, Judge Altonaga found that the Former Officers and Directors' settlement was a fair and reasonable agreement, aside from the request for a bar order. SEC Action, ECF 420. With the bar order issue now resolved, the resolution with the Former Officers and Directors remains fair and reasonable. Indeed, Judge Altonaga has approved the instant settlement. SEC Action, ECF 509. The payment extinguishes the available insurance policy, and several Former Officers and Directors indicated they are uncollectable. [*See* ECF 170-2, Declaration of Jonathan E. Perlman, Receiver ("Prelim. Receiver Decl."), ¶ 9]. As noted by Judge Altonaga, "[t]he prospect of succeeding in claims in any litigation is speculative, and especially so in a matter as complex as this one; therefore, the probability of success and the complexity of the litigation weigh in favor of approval." SEC Action, ECF 420 at 7.

In light of these considerations, a settlement that delivers tens of millions of dollars in relief constitutes a highly satisfactory result for the class under both Rule 23(e) and the *Bennett* factors. *See, e.g.*, *In re Health Ins. Innovations Sec. Litig.*, 2020 WL 10486665, at *8 (M.D. Fla. Oct. 21, 2020) (approving, in securities class action, settlement worth approximately 10% of maximum recoverable damages); *In re Rayonier Inc. Sec. Litig.*, 2017 WL 4542852, at *2 (M.D. Fla. Oct. 5, 2017) (approving, in securities class action, settlement worth approximately 20.8% of estimated aggregate damages as "well above the 2.6% median recovery in similarly-sized securities class actions").

### 2.    Continued litigation would entail substantial cost, risk, and delay.

Under Rule 23(e)(2)(C)(i) and the fourth *Bennett* factor, settlement approval is warranted when continued litigation would be risky, complex, protracted, and costly. *See* Fed. R. Civ. P. 23(e)(2)(C)(i); *Bennett*, 737 F.2d at 986. Here, that is precisely the case. Continued litigation would mean re-opening discovery (including depositions of international witnesses), expert reports and expert discovery, and briefing class certification, summary judgment, *Daubert* motions, and motions in limine—all before the parties would reach trial. Prelim. Counsel Decl. ¶ 32. Even if Plaintiffs prevailed at trial, they likely would have faced years of appeals after that before the class would receive their recovery. The risk of extensive and prolonged litigation is heightened by the fact that several years have passed since the collapse of TCA and initial filing of this action in 2020. *See In re Mednax Servs.*, 2024 WL 1554329, at *7. In short, "[t]he claims and defenses are complex; litigating them has been difficult and time consuming." *In re Check Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1345 (S. D. Fla. 2011). While Plaintiffs' counsel "believed they had strong arguments to offer at trial," they were "in a position to evaluate the costs and benefits of settling this matter in light of the possibility of loss at trial or on appeal." *Taylor*, 2023 WL 2346295, at *4.

### 3.    The settlement provides for an effective distribution of proceeds to the class.

Rule 23(e)(2)(C)(ii) examines "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, the Receiver gave notice and will distribute settlement funds, consistent with Judge Altonaga's orders in the SEC Action. Receiver Decl. ¶¶ 8, 11; Settlement § 7(b). This

includes distributing the net proceeds of the settlement payments to the class. Settlement § 7(c); *see also* SEC Action, ECF 284.

The Receiver, as required in the SEC Action, is working with investors to verify their information, total loss, and banking information, among other information.  Prelim. Receiver Decl. ¶ 8. The settlement class is therefore not required to make a separate claim to receive the benefit of this settlement. *Id.* This type of distribution process has previously been approved in cases where a receiver or trustee has already been appointed to marshal assets and make distributions to defrauded investors. *See, e.g.*, *In re Woodbridge Invests. Litig.*, 2021 WL 6618678, at *2-3 (C.D. Cal. Sept. 3, 2021) (appointing the bankruptcy trustee to effect the class notice program); *Sesto v. Prospect CharterCARE, LLC*, 2019 WL 2394251, at *5-6 (D.R.I. June 6, 2019) (approving notice plan effected by a court-appointed receiver).

### 4.      The terms of the proposed attorneys' fees support final approval.

Next, Rule 23(e)(2)(C)(iii) looks at "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Nothing about the requested attorneys' fee should detract from the fairness of the settlement. Plaintiffs address the appropriateness of the fee award in detail in Section III below.

### 5.      Other agreements pertaining to the settlement.

The final factor for consideration under Rule 23(e)(2)(C) is the existence of any agreements required to be identified by Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(iv). Here, the settlement agreement contemplates that if a sufficient threshold of class members opt out of the settlement, Grant Thornton will have the right to terminate the settlement agreement. Settlement § 7(e). The confidential threshold amount is contained within a separate, confidential Opt-Out Termination Agreement. Prelim. Counsel Decl. ¶ 31; Settlement § 7(e). Plaintiffs remain willing to submit the confidential agreement *in camera* for the Court's review upon request.

### D.  Rule 23(e)(2)(D): The settlement treats settlement class members equitably.

"Matters of concern," for this final Rule 23(e)(2) element, "include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways." Fed. R. Civ. P. 23(e)(2)(C)-(D), Advisory Committee's Notes. Here, the settlement treats all class members equitably. Settlement proceeds will be turned over to the Receiver to be distributed consistently with the distribution plan previously approved by Judge Altonaga in the SEC Action. Settlement

§ 7(c). Judge Altonaga has found the Receiver's *pro rata*, rising tide distribution plan to be "fair and reasonable" and to treat investors (i.e., the settlement class here) equitably. SEC Action, ECF 284 at 13, 34. Furthermore, all class members will provide an identical release of claims. Settlement § 8. The settlement thus treats all class members equally and supports final approval. *See Millstein v. Holtz*, 2022 WL 18024840, at *7 (S.D. Fla. Dec. 30, 2022) (finding a *pro rata* distribution based on each class member's investment to be equitable).

### E.  *Bennett* factor #5: The class's reaction supports final approval.

Finally, the fifth *Bennett* factor asks the Court to look at the "substance and amount of opposition to the settlement." 737 F.2d at 986. As of April 2, 2025, no class members have objected to the settlement, and no class members have opted out. Counsel Decl. ¶ 9. The deadline for class members to opt-out or object to the settlement is May 5, 2025. [ECF 176, ¶ 24.] Since the deadline for class members to file an objection or opt-out of the settlement has not yet passed, Plaintiffs will provide further briefing on this element in their reply brief.

* * *

For the reasons set forth above, the settlement is fair, reasonable, and adequate and satisfies the requirements of Rule 23(e) and the *Bennett* factors. The Court should grant final approval of the settlement.

## II.  The Court should certify the settlement class.

In ruling on Plaintiffs' motion for preliminary approval, the Court found that "it will likely be able to certify the Settlement Class" since Plaintiffs likely satisfied the requirements of Rule 23(a) and Rule 23(b)(3). [ECF 176, ¶ 6.] This remains true—the relevant elements are satisfied—and so Plaintiffs respectfully request that the Court certify the settlement class.

### A.  The settlement class has standing and is ascertainable.

The Court begins by confirming that (1) every member of a proposed settlement class for whom damages are being made available has Article III standing and (2) the proposed class is adequately defined and clearly ascertainable. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (standing); *Drazen v. Pinto*, 74 F.4th 1336, 1342 (11th Cir. 2023) (standing); *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021) (ascertainability).

As to standing, the class is limited to those who suffered losses in the TCA scheme; the settlement class definition excludes profiteers and investors who received back more than their principal investment, *i.e.*, those who did not suffer an injury in fact. Settlement § 2(v). Each class

member thus suffered a harm that is concrete and particularized and has standing. *Drazen*, 74 F.4th at 1342 ("The most obvious concrete harm is a . . . financial loss." (citation omitted)).

Similarly, the class is ascertainable. The class definition uses clear and objective criteria that allows the Court to determine who is a member of the settlement class. The Receiver has identified the investors who sustained losses and has sent notice to those investors of this settlement. Receiver Decl. ¶ 8. As a result, the settlement class satisfies the *Cherry* ascertainability standard.

### B.  The settlement class satisfies the requirements of Rule 23(a).

#### 1.  The settlement class is sufficiently numerous.

A settlement class is sufficiently numerous if "joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). Classes of more than 40 members generally satisfy this requirement. *See Connor v. Permanent Gen. Assurance Corp.*, 2022 WL 1642866, at *4 (S.D. Fla. Apr. 11, 2022) (citing *Cox v. Am. Cast Iron Pipe Co*., 784 F.2d 1546, 1553 (11th Cir. 1986)); *Kilgo v. Bowman Trans*., 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area"). Here, the Receiver has identified approximately 1,000 individuals who held a beneficial interest in or invested in the Master Fund and who appear to be net losers and therefore members of the settlement class. Prelim. Receiver Decl. ¶ 5. Therefore, the settlement class satisfies the numerosity requirement.

#### 2.  There are questions of fact and law common to the class.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is a "low hurdle" because it requires only "that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Connor*, 2022 WL 1642866, at *5 (citing *Williams v. Mohawk Indus., Inc*., 568 F.3d 1350, 1355-56 (11th Cir. 2009)). "The commonality inquiry is generally satisfied when defendant has engaged in a standardized course of conduct that affects all class members." *In re Takata Airbag Prod. Liab. Litig.*, 677 F. Supp. 3d 1311, 1322 (S.D. Fla. 2023).

Such is the case here. The class's claims are based on common factual and legal issues, including: whether the Former Officers and Directors acted fraudulently and breached fiduciary duties while managing the TCA Funds; whether Grant Thornton's audit reports contained material misrepresentations or omissions; and whether Grant Thornton substantially assisted and knew of

TCA's fraud and breaches of fiduciary duty. These issues are common to the settlement class. *See, e.g.*, *Bruhl v. Price Waterhousecoopers Int'l*, 257 F.R.D. 684, 688-90 (S.D. Fla. 2008).

### 3. The class representatives' claims are typical of the settlement class.

The class representatives also meet Rule 23(a)(3)'s requirement that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A representative plaintiff's claim is typical if "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *In re Takata Airbag*, 677 F. Supp. 3d at 1323. "Like commonality, the test for typicality is not demanding." *In re Checking Acct. Overdraft Litig.*, 286 F.R.D. 645, 653 (S.D. Fla. 2012) (citation omitted).

Here, the class representatives have the same interest and suffered the same injuries as the rest of the class in that they all held TCA investments when the funds collapsed in 2020 and lost some or all of their investment as a result. Prelim. Receiver Decl. ¶ 5. Because "the same course of conduct is directed at both the named plaintiff[s] and the members of the proposed class," typicality has been satisfied. *In re Mednax Servs.*, 2024 WL 1554329, at *4.

### 4. The class representatives and class counsel are adequate to protect the interest of the settlement class.

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class," and Rule 23(g) requires this Court to appoint adequate counsel to represent the class. Fed. R. Civ. P. 23(a)(4), (g). "This inquiry requires the Court to consider both whether there are any inter-class conflicts and whether class counsel and named plaintiffs will prosecute the case with zeal." *In re Takata Airbag*, 677 F. Supp. 3d at 1324.

The Court previously found Plaintiffs' counsel to be adequate and appointed them as class counsel under Rule 23(g). [ECF 176, ¶ 7]. And, as discussed above, the class representatives have adequately represented the class. Therefore, the final requirement of Rule 23(a) has been satisfied.

### C. The settlement class meets the requirements of Rule 23(b).

In addition to meeting the requirements of Rule 23(a), the settlement class also satisfies the criteria in Rule 23(b)(3).

1. **The settlement class satisfies Rule 23(b)(3) because common issues of law and fact predominate.**

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Predominance requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *In re Takata Airbag*, 677 F. Supp. 3d at 1324 (internal quotations omitted). "[T]he presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 893 (11th Cir. 2023). In the Eleventh Circuit, the predominance inquiry is customarily applied on a claim-by-claim basis. *See, e.g.*, *Tershakovec v. Ford Motor Co., Inc.*, 79 F.4th 1299, 1308 (11th Cir. 2023).

The predominant issues as to Plaintiffs' claims include whether the Former Officers and Directors committed fraud or breached fiduciary duties and whether Grant Thornton knew of the fraud and breaches of fiduciary duty and provided substantial assistance in furtherance of the scheme. These types of questions drive the resolution of Plaintiffs' claims. *E.g.*, *Bruhl*, 257 F.R.D. at 698 (finding certification of an aiding and abetting claim "appropriate because none of the claim's elements requires reliance or any other factor unique to each class member"); *Cabot E. Broward 2 LLC v. Cabot*, 2018 WL 2006762, at *5-6 (S.D. Fla. Mar. 21, 2018) (same). The predominance requirement has therefore been satisfied.

2. **Class-wide settlement is the superior method for resolving the claims at issue in this case.**

Proceeding as a class in this case is superior and satisfies Rule 23(b)(3), especially in the context of settlement. Preliminarily, "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *see also Burrow v. Forjas Taurus S.A.*, 2019 WL 13034869, at *7 (S.D. Fla. Mar. 15, 2019). Rule 23(b)(3)'s superiority requirement instead turns on whether a class action is better than other available methods of adjudication. Fed. R. Civ. P. 23(b)(3).

Here, requiring hundreds of investors to litigate their claims separately would involve "repetitive proceedings that will probe the same questions in multiple courts, which could lead to inconsistent rulings." *In re Takata Airbag Prod. Liab. Litig.*, 2023 WL 6274837, at *12 (S.D. Fla.

Aug. 24, 2023). Further, many of the class members do not reside in the United States and may not have the ability to bring action against Grant Thornton in their home jurisdiction. *See, e.g.*, *Torres-Vallejo v. Creativexteriors, Inc.*, 220 F. Supp. 3d 1074, 1084-85 (D. Colo. 2016) (finding superiority in part because "the class members are Mexican nationals with limited access to U.S. courts"). Resolving the claims of all class members in this Court where personal jurisdiction has been established over Grant Thornton is the superior method.

* * *

For the reasons set forth above, the settlement class meets all criteria of Rule 23(a) and Rule 23(b), and the Court should certify the settlement class.

### III.    The Court should approve the requested attorneys' fees and litigation-cost reimbursements.

Finally, Plaintiffs respectfully request that the Court approve their request for an award of $6,220,500 in attorneys' fees as well as reimbursement of their $175,790.05 in litigation costs. The requested fee includes attorney's fees to compensate not only Class Counsel, but also counsel for the Receiver, who assisted in delivering the pending settlement and who brought suit independently against Defendants on a contingency basis.[6]

The total requested fee amounts to less than 24% of the overall settlement and amounts to about 29% of the funds to be paid by Grant Thornton. (Counsel are not seeking a contingency fee from the settlement funds to be paid by the Former Officers and Directors.) Both percentages fall below the Eleventh Circuit's average award of 33% of a common fund. The fee is also reasonable under the *Camden* factors used in evaluating attorneys' fees in common-fund settlements. *See Camden I Condo. Ass'n, Inc. v Dunkle*, 946 F.2d 768, 772 (11th Cir. 1991). And a lodestar cross-check confirms the reasonableness of the fee, since counsel will receive a multiplier of just 1.04. *See Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (noting that "lodestar multiples 'in large and complicated class actions' range from 2.26 to 4.5" (citation omitted)).

---

[6] Consistent with the Litigation Coordination Agreement between the Class and the Receiver, the fees awarded by this Court will be shared amongst the firms, provided that the compensation to the Receiver's counsel and the Receiver's disbursement of the remaining amount to Class Counsel, shall be subject to review and approval by the court in the SEC Action.

Class Counsel's litigation expenses were also reasonable and necessarily incurred, as explained below. Plaintiffs thus request that the Court approve the reimbursement of these costs.

### A. The requested fee award is in line with the Eleventh Circuit's common fund fee awards.

In the Eleventh Circuit, "attorneys' fees awarded from a common fund must be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden*, 946 F.2d at 774. While class action attorneys "are entitled to compensation for their services from the common fund, . . . the amount is subject to court approval." *Id.* at 771

Historically, "[t]he majority of common fund fee awards fall between 20% to 30% of the fund." *Id.* at 774. But in recent years, "numerous decisions within the Eleventh Circuit have found that fee awards in the range of 30% to 35% fee are within the range of reason." *In re Checking Acct. Overdraft Litig.*, 2020 WL 4586398, at *21 (S.D. Fla. Aug. 10, 2020)); *see also Diakos v. HSS Sys., LLC*, 2016 WL 3702698, at *6 (S.D. Fla. Feb. 5, 2016) (approving fee award of one-third of common fund); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *5 (S.D. Fla. Sept. 26, 2012), *report and recommendation adopted*, 2012 WL 5289628 (S.D. Fla. Oct. 25, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.").

Here, Plaintiffs' counsel are seeking less than 24% of that total settlement value. Awards of less than 25% of the common fund are presumptively reasonable in the Eleventh Circuit. *See Arkin v. Pressman, Inc.*, 38 F.4th 1001, 1005 n.3 (11th Cir. 2022). Even if the contribution by the Former Officers and Directors is not counted, counsel seek fees equal to 29% of the funds contributed by Grant Thornton. Either way, the requested fee lands comfortably in or below the typical fee percentages awarded in similar cases.

Notably, in order to resolve the protracted settlement negotiations, Plaintiffs' counsel voluntarily reduced the fee they are seeking. This concession helped ensure the finalization of the settlement for the class. Rather than seeking 33% of the fund in line with the Eleventh Circuit's recent precedent, Plaintiffs agreed to move for court approval of an award of attorneys' fees of only 29% of the funds contributed by Grant Thornton. Settlement § 10(b).

### B. The requested fee award is also reasonable under the Camden factors.

To further determine the reasonableness of a requested fee award, courts consider twelve factors articulated in *Camden*. 946 F.2d at 772 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). Plaintiffs detail below why these factors favor approval too.

### 1.    The time and labor required.

The first *Camden* factor supports the requested fee, given the considerable time and effort expended. The Class Action commenced in April 2020. [ECF 1]. Since then, Class Counsel has expended more than 5,754 hours, and counsel for the Receiver has expended more than 2,507 hours, without compensation. Counsel Decl. ¶ 12. This has included the following efforts by counsel:

- Prepared and filed the initial complaint. Prelim. Counsel Decl. ¶ 1.

- Developed a coordination plan with the Receiver to jointly pursue claims against Grant Thornton. *Id.* ¶ 2; SEC Action, ECF 285.

- Reviewed thousands of documents before preparing a detailed amended complaint. Prelim. Counsel Decl. ¶¶ 9-10.

- Prepared and filed a motion to effect international service in accordance with the Hague Convention. [ECF 21; ECF 26].

- Successfully opposed Grant Thornton's motion to dismiss, which argued lack of jurisdiction, improper venue, and failure to state a claim. [ECF 58]. Class Counsel's opposition papers relied on over 50 exhibits supporting jurisdiction. [ECF 68; ECF 85].

- Prepared and filed a second amended complaint in October 2023. [ECF 105].

- Opposed Grant Thornton's motion for judgment on the pleadings. [ECF 143].

- Prepared and served two sets of document requests and interrogatories, along with Rule 30(b)(6) deposition notices. Prelim. Counsel Decl. ¶ 13.

- Met and conferred repeatedly with counsel for Grant Thornton regarding discovery negotiations and disputes. *Id*. ¶ 15.

- Brought eight discovery disputes to the Court for resolution in October 2023, gaining additional discovery in six of those disputes. [ECF 101, 116].

- Reviewed tens of thousands of documents produced in discovery. Prelim. Counsel Decl. ¶ 13.

- Retained and worked with an experienced and highly credentialed auditing expert to assist in discovery and the review of documents, as well as to prepare for class certification. *Id.* ¶ 14.

- Retained and worked with an experienced accounting expert to assist with developing proof of class-wide damages. *Id.*
- Engaged in mediations on March 25, 2024, and April 29, 2024. *Id.* ¶¶ 20-22.
- Engaged in months-long negotiations with the JOLs. *Id*. ¶¶ 23-26.
- Prepared the settlement agreement, class notices, and settlement-approval papers, and otherwise worked to move forward with the settlement. *Id.* ¶¶ 26, 33.

Plaintiffs' counsel's "considerable time and effort both before and after the initiation of [the actions] investigating, prosecuting, and settling the claims at issue" support the requested fee. *Taylor*, 2023 WL 2346295, at *7.

## 2. The novelty and difficulty of the relevant questions.

The second *Camden* factor, which considers the novelty and difficulty of the relevant questions, further supports the requested fee.

As a chief example, personal jurisdiction had to be established over the international defendants, who firmly believed they were not subject to jurisdiction in the United States. To establish jurisdiction, Class Counsel, with assistance from counsel for the Receiver, engaged in a lengthy factual investigation and culled through millions of Receivership documents to obtain critical documents reflecting Grant Thronton's alleged involvement and liability. Prelim. Counsel Decl. ¶¶ 9-11. As a result of this effort, Class Counsel successfully defeated Grant Thornton's motion to dismiss and established personal jurisdiction. [*See* ECF 85].

Grant Thornton Cayman also challenged Plaintiffs' standing to bring their aiding and abetting breach of fiduciary duty claim and brought a motion for judgment on the pleadings to dismiss the claim. [ECF 134]. Grant Thornton Cayman argued that the claim was derivative in nature and could only be brought in the name of the Funds by the Receiver [*See id.*]. Class Counsel marshalled authority to the contrary, [*see* ECF 143], and the Receiver brought suit against Grant Thornton asserting a claim for aiding and abetting breach of fiduciary duty, Receiver Action, ECF 1. While the motion remains pending due to the settlement, Plaintiffs' counsel was able to refute the motion and the novel question of law.

Plaintiffs' counsel also confronted difficult questions of fact. As mentioned above, Grant Thornton issued *qualified* audit opinions—not "clean" audits. While Plaintiffs contend that these qualified opinions were inadequate, and that adverse opinions should have been issued, the fact is

that Grant Thornton's audits did identify a number of weaknesses in the TCA funds for investors. Counsel worked with an expert to develop a meritorious theory of liability.

Faced with these novel questions of law and fact, Plaintiffs' counsel successfully navigated the issues and delivered strong relief for the class. As such, "the legal and practical challenges that [Plaintiffs'] Counsel surmounted also support a fee award." *Belin v. Health Ins. Innovations, Inc.*, 2022 WL 1126006, at *4 (S.D. Fla. Mar. 10, 2022).

### 3. The skill required to perform the services and the experience, reputation, and ability of Plaintiffs' counsel.

Class Counsel has significant experience prosecuting class actions, particularly in the context of investor claims. Prelim. Counsel. Decl. ¶ 38. Class Counsel brought this experience, as well as their experience bringing similar claims alongside or on behalf of court-appointed fiduciaries, to bear in this action. Likewise, counsel for the Receiver has significant experience in providing relief to defrauded investors. Receiver Decl. ¶ 4.

Plaintiffs' counsel employed their skill, knowledge, and experience to plead viable claims, develop the necessary evidence, and position the investors for a strong class recovery. The third and ninth *Camden* factors therefore also supports the requested fee. *See Taylor*, 2023 WL 2346295, at *7 ("A higher fee award is favored where there are complex issues requiring experience and skill on the part of Class Counsel." (quotation omitted)); *Gevaerts v. TD Bank*, 2015 WL 6751061, at *12 (S.D. Fla. Nov. 5, 2012) ("There can be no dispute that based on the novel and very complex issues confronted by Class Counsel in this case, detailed here and elsewhere, that an extraordinary group of lawyers was required to prosecute this case.").

### 4. The risks posed to Plaintiffs' counsel.

The sixth and tenth *Camden* factors consider whether the fee is fixed or contingent and the undesirability of the case, *i.e.*, the risks posed to counsel in bringing the action. Similarly, the fourth *Camden* factor considers the preclusion of other employment in accepting the case.

Class Counsel prosecuted the Class Action on a contingent fee basis, as is customary in class actions, as did counsel for the Receiver in prosecuting the Receiver Action. Counsel Decl. ¶ 11. "In undertaking to prosecute this complex action on that basis, [Plaintiffs'] Counsel assumed a significant risk of nonpayment or underpayment." *In re Checking Acct.*, 830 F. Supp. 2d at 1364. Which is why many courts recognize that the contingent fee risk is an important factor in

determining the fee award. *See id.* at 1364-65 (collecting cases); *see also Milstein*, 2022 WL 18024840, at *11.

Further, the novel and difficult questions presented in these actions, as discussed above, contributed to the undesirability of the case. *See Millstein*, 2022 WL 18024840, at *10. Apart from this litigation, no other case involving TCA was filed against Grant Thornton. "Counsel should be rewarded for taking on a case from which other law firms shrunk." *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. at 1364 (quotation omitted). Consequently, these two factors—representing the risks Plaintiffs' counsel assumed when bringing the actions—support the reasonableness of the requested fee.

Plaintiffs' counsel was also precluded from other work in pursuing the actions. In total, 13 attorneys and paralegals worked more than 100 hours on this case. Counsel Decl. ¶ 13. While Plaintiffs' counsel is proud to have delivered the settlement before the Court, "a case of this magnitude limited [counsel's] ability to pursue other matters with guaranteed compensation from clients, as well as other contingency fee matters." *Belin*, 2022 WL 1126006, at *4. All the while, counsel advanced substantial costs on behalf of the class. This included the cost of multiple expert retentions, all advanced by counsel with no guarantee of a future recovery.

The fourth *Camden* factor therefore also weighs in favor of granting the requested fee.

### 5. The amount involved and the results obtained.

The "most important factor" in determining an award of attorneys' fees is the amount involved and the results obtained. *Cabot*, 2018 WL 2006762, at *5; *see also Camden*, 946 F.2d at 774 ("monetary results achieved predominate over all other criteria."). As already discussed in detail, the settlement recovers nearly $26.5 million—substantial monetary relief. "[A]lthough the Settlement Agreement may not provide a full recovery to the Class, it is still a significant achievement." *Belin*, 2022 WL 1126006, at *5; *see also Diakos*, 2016 WL 3702698, at *7 ("Given the relief conferred by this settlement, this factor, too, weighs in favor of counsel's fee request."). Meanwhile, as is discussed in the subsection that follows, the requested fee falls below the percentage customarily awarded in such cases. All of this demonstrates that the amounts involved and the results obtained support the request for fees.

### 6. The customary fee and awards in similar cases.

Finally, the fifth and twelfth *Camden* factors, which consider the customary fee and awards in similar cases, respectively, weigh in favor of the requested fee award. As this Court has noted,

"[a] one-third recovery . . . is a customary fee" in class actions. *Diakos*, 2016 WL 3702698, at *6; *see also Wolff*, 2012 WL 5290155, at *5. Here, the requested fee is 29% of the funds contributed by Grant Thornton and 24% of the overall settlement—below the customary fee awarded in the Eleventh Circuit. Similarly, the requested fee is below the fee typically awarded in class action litigation brought on behalf of investors. *See, e.g.*, *In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *13 (M.D. Fla. Mar. 23, 2021), *report and recommendation adopted*, 2021 WL 1186838 (M.D. Fla. Mar. 30, 2021) (award of 33%); *Pritchard v. Apyx Med. Corp.*, 2020 WL 6937821, at *1 (M.D. Fla. Nov. 18, 2020) (33 1/3%); *In re NetBank, Inc. Sec. Litig.*, 2011 WL 13353222, at *2 (N.D. Ga. Nov. 9, 2011) (34%); *In re Profit Recovery Grp. Int'l, Inc. Sec. Litig.*, 2005 WL 8172262, at *3 (N.D. Ga. May 26, 2005) (33 1/3%); *In re Clarus Corp. Sec. Litig.*, 2005 WL 8172269, at *3 (N.D. Ga. Jan. 6, 2005) (33 1/3%).

Accordingly, the *Camden* factors support the reasonableness of the requested fee.

### C.  The requested fee is also reasonable under a lodestar cross-check.

Although the Eleventh Circuit's "precedent in common-fund cases indicates that a true lodestar analysis isn't necessary," counsel must confirm "how much time, effort, and resources went into their work" so the Court may evaluate the reasonableness of the fee request. *See Dickenson v. NPAS Sols., LLC*, 2024 WL 4142934, at *2 (11th Cir. Sept. 11, 2024); *accord In re Home Depot Inc.*, 931 F.3d 1065, 1091 (11th Cir. 2019) ("Courts often use a [lodestar] cross-check to ensure that the fee produced by the chosen method is in the ballpark of an appropriate fee."). Here, Plaintiffs' counsel expended approximately 8,262 hours total in litigating the Class Action and the Receiver Action through March 21, 2025, resulting in a lodestar of approximately $5,945,692.75—an effective multiplier of 1.04. Counsel Decl. ¶ 12. This multiplier is well in line with the multipliers commonly awarded in this Circuit. *See, e.g.*, *Pinto*, 513 F. Supp. 2d at 1344 (noting that "lodestar multiples 'in large and complicated class actions' range from 2.26 to 4.5" (citation omitted)). And the multiplier will only continue to decrease as Plaintiffs' counsel spends more time effectuating the settlement. Counsel Decl. ¶ 12. The lodestar cross-check therefore supports the reasonableness of the requested fee.

* * *

For the reasons set forth above, the requested fee is in line with the Eleventh Circuit's common fund fee awards, is reasonable under the *Camden* factors, and supported by a lodestar cross-check. The Court should approve Plaintiffs' counsel's request for a fee award of $6,220,500.

### D.  The Court should approve Class Counsel's request for reimbursement of their reasonable costs.

Plaintiffs also respectfully request that Class Counsel be reimbursed for the litigation expenses incurred in prosecuting this case. "Indeed, courts normally grant expense requests in common fund cases as a matter of course." *Hanley v. Tampa Bay Sports & Ent. LLC*, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020).

As detailed in their supporting declaration, to date Class Counsel have incurred a total of $175,790.05 in litigation costs in this case, which they advanced on behalf of the class and have not thus far had reimbursed. Counsel Decl. ¶ 14. These expenses include mediation fees, expert witness fees, electronic legal research, process servers, photocopying, and postage. *Id.* These costs "were necessarily incurred in furtherance of the litigation." *In re Checking Acct. Overdraft Litig.*, 2015 WL 12641970, at *18 (S.D. Fla. May 22, 2015). Plaintiffs request that the Court approve the request to reimburse Class Counsel for their costs.

### Conclusion

Plaintiffs respectfully request that the Court grant final approval of the settlement the parties have reached, certify the settlement class, and approve the requested attorneys' fees of $6,220,500 and cost-reimbursements of $175,790.05. A proposed order is attached **Exhibit 3**.

### Local Rule 7.1 Certification

Pursuant to Local Rule 7.1, counsel for Plaintiffs conferred with counsel for Grant Thornton Cayman Islands and Grant Thornton Ireland, who advised that Grant Thornton Cayman Islands and Grant Thornton Ireland do not oppose the relief sought in this Motion.


Date: April 3, 2025                              Respectfully submitted,

                                                 */s/ Marcelo Diaz-Cortes*

                                                 **LEVINE KELLOGG LEHMAN
                                                 SCHNEIDER + GROSSMAN LLP**
                                                 Jeffrey C. Schneider, P.A.
                                                 Florida Bar No.: 933244
                                                 Jason K. Kellogg, P.A.
                                                 Florida Bar No.: 0578401
                                                 Marcelo Diaz-Cortes
                                                 Florida Bar No.: 118166
                                                 Miami Tower

100 SE 2nd Street, 36th Floor
Miami, Florida 33131
T: (305) 403-8788
F: (305) 403-8789
Email: jcs@lklsg.com
ph@lklsg.com
jk@lklsg.com
ame@lklsg.com
md@lklsg.com
rm@lklsg.com

**GIBBS MURA LLP**
David Stein (*pro hac vice*)
1111 Broadway, Suite 2100
Oakland, CA 94607
T: (510) 350-9700
F: (510) 350-9701
E-Mail: ds@classlawgroup.com

Emily Beale (*pro hac vice*)
136 Madison Ave., Suite 541
New York, NY 10036
Phone: (510) 340-4732
Fax: (510) 350-9701
E-Mail: eb@classlawgroup.com

**WEINBERG WHEELER HUDGINS
GUNN & DIAL**
Aaron M. Cohn, Esq.
Florida Bar No.: 95552
Weinberg Wheeler Hudgins
Gunn & Dial
2601 South Bayshore Drive
Suite 1500
Miami, FL 33133
T: (305) 455-9500
F: (305) 455-9501
E-Mail: acohn@wwhgd.com
dmallqui@wwhgd.com
mferrer@wwhgd.com

**SILVER LAW GROUP**
Scott L. Silver, Esq.
Florida Bar No.: 095631
11780 W. Sample Road
Coral Springs, FL 33065

28

T: (954) 755-4799
F: (954) 755-4684
E-Mail: ssilver@silverlaw.com
rfeinberg@silverlaw.com

*Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the forgoing document was served on April 3, 2025

via the Court's CM/ECF filing system to all recipients registered to receive notices of electronic

filings generated by CM/ECF for this case.

By: */s/ Marcelo Diaz-Cortes*
Marcelo Diaz-Cortes